## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

RICARDO GURULE,

        Plaintiff,

v.                                No. CIV-16-0229 CG

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court upon Plaintiff's *Motion to Reverse and Remand for Rehearing, with Supporting Memorandum* (the "Motion"), (Doc. 19), filed October 31, 2016; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 23), filed January 30, 2017; and Plaintiff's *Reply in Support of Motion to Reverse and Remand for Rehearing* (the "Reply"), (Doc. 24), filed February 14, 2017.

On February 8, 2012, Mr. Gurule filed an application for disability insurance benefits and on May 26, 2012, he filed an application for supplemental security income benefits. (Administrative Record ("AR") 18). Mr. Gurule alleged disability beginning on December 1, 2009 in both applications. (AR 18). His applications were denied initially on August 15, 2012, (AR 114-117, 118-120), and again upon reconsideration on February 21, 2013. (AR 123-124, 125-127). Mr. Gurule filed his request for a hearing on March 21, 2013, (AR 128-129), and a hearing was held on February 20, 2014 before Administrative Law Judge ("ALJ") Michelle K. Lindsay. (AR 32-71). Mr. Gurule and

Judith Beard, an impartial vocational expert ("VE"), testified at the hearing. (AR 32-71). Mr. Gurule was represented at the hearing by attorney Christopher S. O'Connor. (AR 18).

The ALJ issued her opinion on June 26, 2014, finding that Mr. Gurule was not disabled. (AR 15-31). Mr. Gurule filed an application for review by the Appeals Council, which was summarily denied, (AR 7-9), making the decision of the ALJ the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Through new counsel, Kevin Sanders and Michael Armstrong, Mr. Gurule argues that the ALJ committed reversible error by failing to: (1) perform a function-by-function analysis of work-related abilities; (2) formulate a credibility analysis that is supported by substantial evidence; (3) find that Mr. Gurule was severely impaired by foot problems and obesity; (4) develop the administrative record; and (5) rely on an adequate number of representative jobs. (Doc. 19).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ did not commit reversible legal error and supported her decision with substantial evidence, the Court orders that the Motion be **DENIED** and the case be **DISMISSED WITH PREJUDICE**.

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir.

2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process ("SEP") has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1257.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III.    Background

Mr. Gurule initially applied for disability benefits and supplemental security income alleging that he suffers from a "L4-[L]5 herniated disc, bulging, pain in legs, and carpal tun[n]el." (AR 72).

At step one, the ALJ determined that Mr. Gurule met the insured status requirements through September 30, 2014, and found that he had not engaged in substantial gainful activity since December 1, 2009, the alleged onset date. (AR 20). At step two, the ALJ concluded that Mr. Gurule was severely impaired by degenerative disc and facet disease of the lumbar spine, right rotator cuff tear, anxiety, and depression. (AR 21).

At step three, the ALJ considered whether Mr. Gurule's impairments solely or in combination met or satisfied any of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 21). The ALJ ultimately determined that none of Mr. Gurule's impairments, solely or in combination, met or medically equaled the severity of one of the listed impairments. (AR 21).

The ALJ proceeded to step four. First, she analyzed Mr. Gurule's subjective complaints of his symptoms and the objective medical evidence in the record. (AR 23-25). The ALJ found that Mr. Gurule's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (AR 24-25). The ALJ discussed Mr. Gurule's medical records and considered the reports and opinions of agency medical consultants Stephen A. Whaley, M.D., and James Wellons, M.D. (AR 24-25).

The ALJ ultimately found that Mr. Gurule has the RFC to perform light work, except he can only occasionally climb stairs and ramps. (AR 23). The ALJ additionally limited him to occasionally stooping, crouching, kneeling, and crawling; never climbing ladders, ropes, or scaffolds; and frequently reaching overhead with the dominant upper extremity. (AR 23). Further, the ALJ limited Mr. Gurule to understanding, remembering, and carrying out only simple instructions; maintaining attention and concentration to perform simple tasks for two hours at a time without redirection; and having only occasional contact with the general public, coworkers, and supervisors. (AR 23).

Next, the ALJ considered whether Mr. Gurule was capable of doing any of his past relevant work. (AR 25). The ALJ explained that Mr. Gurule's past relevant work includes the jobs of rough carpenter and dry wall applicator, and found that in light of the RFC finding, Mr. Gurule was not capable of performing his past work. (AR 25).

At step five, the ALJ inquired whether Mr. Gurule would be able to perform any other work existing in significant numbers in the national economy. (AR 26-27). The ALJ noted that Mr. Gurule was 49 years old on the alleged disability onset date and was therefore classified as a "younger individual" in accordance with the Regulations. (AR 26). The ALJ also determined that Mr. Gurule has at least a high school education and is able to communicate in English. (AR 26).

The VE testified at the hearing that an individual with Mr. Gurule's same age, education, work experience, and RFC could perform the jobs of assembler/small products, inspector/hand packager, and electronics worker. (AR 26-27). Based on this analysis, the ALJ concluded that because Mr. Gurule is capable of performing work

existing in significant numbers in the national economy, he is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 27).

**IV.    Analysis**

Mr. Gurule argues that the ALJ committed reversible error by failing to: (1) perform a function-by-function analysis of work-related abilities; (2) formulate a credibility analysis that is supported by substantial evidence; (3) find that Mr. Gurule was severely impaired by foot problems and obesity; (4) develop the administrative record; and (5) rely on an adequate number of representative jobs. (Doc. 19 at 2). The Commissioner responds that the ALJ's decision is supported by substantial evidence and free of reversible legal error. (Doc. 23 at 2).

*A.    The ALJ's Function-by-Function Analysis*

First, Mr. Gurule argues that the ALJ failed to assess his work-related abilities on a function-by-function basis. (Doc. 19 at 10). Specifically, Mr. Gurule asserts that the ALJ overlooked his standing and walking limitations that would have narrowed the range of light work Mr. Gurule can perform. (Doc. 19 at 10-11). The Commissioner responds that the ALJ's RFC was appropriate for Mr. Gurule's limitations. (Doc. 23 at 15-16).

Social Security Ruling 96-8p provides that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184 at *3 (July 2, 1996). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, at *7.

Courts in the Tenth Circuit have held that "the narrative discussion requirement of SSR 96-8p 'does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed.'" *Oliva v. Colvin*, No. 13-CV-02495-PAB, 2015 WL 5719645, at *10 (D. Colo. Sept. 30, 2015) (unpublished) (citing *Crawford v. Colvin*, No. 12-1046-JWLoo, 2013 WL 672955, at *4 (D. Kan. Feb. 25, 2013) (unpublished)). "However, the question of whether an ALJ has engaged in an appropriate narrative discussion is, as a general matter, evaluated on a case by case basis." *Id.* (internal citations omitted). In any case, the concern underlying SSR 96-8p and the requirement that the RFC be a function-by-function assessment supported by a narrative discussion "is that, without a function-by-function analysis, an ALJ 'may . . . overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (citing SSR 96-8p, at *4).

As a result, courts have found an ALJ to have fulfilled her obligations under SSR 96-8p when it is clear from the written decision that she has considered evidence of a claimant's limitations and adequately explained how the evidence in the record supports her RFC finding in order to allow for the court's meaningful review of the decision. *See Hendron*, 767 F.3d at 954; *compare Lopez v. Colvin*, No. 12-cv-01293-WYD, 2013 WL 5201009, at *3 (D. Colo. Sept. 16, 2013) (unpublished) (finding that the ALJ provided an adequate narrative discussion under SSR 96-8p where the ALJ cited specific medical facts and opinions and nonmedical evidence in assessing the RFC), *and Oliva*, 2015 WL 5719645, at *11 (holding that the ALJ's narrative discussion of the evidence was sufficient where the ALJ identified medical evidence and the subjective complaints

8

relied upon in formulating the RFC), *with Spicer v. Barnhart*, No. 02-5072, 64 Fed. Appx. 173, 177-78 (10th Cir. May 5, 2003) (unpublished) (remanding case where the ALJ's narrative discussion of the evidence supporting the RFC finding provided no indication that the ALJ considered one of the plaintiff's diagnosed and medically documented impairments either alone or in combination with her other impairments).

Here, the ALJ found Mr. Gurule to have the RFC to perform light work, but that he is limited to only occasionally climbing stairs and ramps, stooping, crouching, kneeling, and crawling; and never climbing ladders, ropes, or scaffolds. (AR 23). The ALJ then described Mr. Gurule's self-reports of his functional limitations, the activities he engages in, as well as the medical evidence bolstering and detracting from his claims of disabling functional limitations.

The ALJ reviewed Mr. Gurule's alleged symptoms as described by Mr. Gurule in his reports and testimony. Mr. Gurule alleged he constantly experiences extreme back, arm, shoulder, leg, and foot pain. (AR 23-24). Mr. Gurule also stated that he experienced weakness and numbness and had difficulty standing, walking, sitting, lifting, and performing physical work activities. (AR 24).

The ALJ found that Mr. Gurule's allegations were inconsistent with his daily activities and medical record. (AR 24). Mr. Gurule reported that he is able to complete daily activities such as caring for his dog, performing personal care needs, cooking, washing dishes, shopping, managing his finances, and using public transportation. (AR 24).

In addition, the ALJ noted that although the medical record shows evidence of impairment, it does not show that Mr. Gurule is as restricted as he claims. (AR 24). The

ALJ specifically noted the x-rays and MRI scan that showed degenerative facet disease of the lumbar spine. (AR 24). However, the medical record also showed that Mr. Gurule refused to follow his doctors' recommended treatment and would not continue taking medication or going to physical therapy. (AR 24). Instead, Mr. Gurule stated that he takes 800 milligrams of ibuprofen for his pain. (AR 25).  Furthermore, the record showed that Mr. Gurule continued to work occasionally in dry wall in 2011 and 2012, after the onset of his alleged disability. (AR 25). Based on this evidence, the ALJ found that "the mere fact that he could do some very heavy work, lifting over one hundred pounds, is a strong indicator that he could have done at least light work on a regular basis." (AR 25).

Finally, the ALJ weighed the medical opinions of state agency medical examiners. (AR 25). The ALJ gave Dr. Whaley's opinion that Mr. Gurule could perform medium work with occasional postural limitation "little weight" because "evidence received at the hearing level shows that [Mr. Gurule] suffers from shoulder pain, which reasonably limits [him] more than initially determined." (AR 25). By comparison, the ALJ gave Dr. Wellons' opinion that Mr. Gurule could perform light work with occasional postural limitations "significant weight" because she found it to be consistent with the medical evidence. (AR 25).

Mr. Gurule does not identify any additional evidence which the ALJ failed to consider and only argues generally that "substantial evidence supports restrictions that more than slightly reduce Mr. Gurule's ability to perform a full range of light work." (Doc. 19 at 11). The Court disagrees. As evidenced by the discussion above, the ALJ identified the medical evidence she relied on in making her RFC determination, explained which evidence she used to make her adverse credibility finding, and

10

weighed the medical opinions in the record. This is sufficient to show how the evidence supported her RFC finding pursuant to to SSR 96-8p. *See Lopez*, 2013 WL 5201009, at *3 (finding the ALJ's decision adequate under SSR 96-8p where the ALJ cited to specific medical facts, medical opinions, and nonmedical evidence in determining the RFC, despite the fact that ALJ did not state specifically what evidence he relied upon in connection with specific limitations); *see also Oliva*, 2015 WL 5719645, at *11.

  B. *The ALJ's Credibility Analysis*

  Mr. Gurule argues that the ALJ's credibility analysis is not based on substantial evidence because the ALJ did not make findings about Mr. Gurule's ability to walk or stand, as discussed in part A *supra*. (Doc. 19 at 12). Mr. Gurule further contends that the ALJ did not "fully credit" Mr. Gurule's statements about the limiting effects of his back and foot pain and his difficulty walking or standing. (Doc. 19 at 12). Mr. Gurule asks the Court to consider his allegations of disabling pain under the *Luna* framework. (Doc. 19 at 12); citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). The Commissioner states that the ALJ properly analyzed Mr. Gurule's subjective complaints according to the regulations and found that his complaints were not consistent with the objective medical evidence. (Doc. 23 at 17).

  1. *Standard for Evaluating Subjective Complaints of Pain*

  An ALJ may only find the claimant's pain to be disabling if it is "so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *See Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986) (quotations omitted). The ALJ must consider the credibility of the claimant's subjective testimony about his pain, and its effect on his ability to work, in making the RFC determination.

*See Madron v. Astrue*, No. 06-1200, 311 Fed. Appx. 170, 175 (10th Cir. Feb. 11, 2009)

(unpublished) (citing Social Security Ruling ("SSR") 96-7p, 1996 SSR LEXIS 4, at *6).

"Credibility determinations are peculiarly the province of the finder of fact, and we will

not upset such determinations when supported by substantial evidence. However,

findings as to credibility should be closely and affirmatively linked to substantial

evidence and not just a conclusion in the guise of findings." *Wilson v. Astrue*, 602 F.3d

1136, 1144 (10th Cir. 2010).

The framework for the proper analysis of a claimant's subjective testimony is set

out in *Luna*, 834 F.2d 161. The ALJ must consider:

> (1) whether Claimant established a pain-producing impairment by
> objective medical evidence; (2) if so, whether there is a "loose nexus"
> between the proven impairment and the Claimant's subjective
> allegations of pain; and (3) if so, whether, considering all the evidence,
> both objective and subjective, Claimant's pain is in fact disabling.

*Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992) (citing *Luna*, 834 F.2d at

163-64).

Mr. Gurule alleges that the ALJ did not perform the third prong of the *Luna*

analysis. (Doc. 19 at 13). The third prong requires the ALJ to consider all of the

evidence, both objective and subjective, to determine whether Mr. Gurule's pain was

disabling. "Objective" evidence is any evidence, whether physiological or psychological,

that can be discovered and substantiated by external testing. *Luna*, 834 F.2d at 162.

"Subjective" evidence consists of statements by a claimant or other witnesses that can

be evaluated only on the basis of credibility. *Id.* at 162 n.2. The ALJ noted that medical

evidence demonstrated that Mr. Gurule has a degenerative facet disease of his lumbar

spine. (AR 24). Therefore, the ALJ was required to consider his claims of disabling pain

and decide whether she believed him. *Luna*, 834 F.3d at 163; *see also* 42 U.S.C. § 423(d)(5)(A).

To determine whether a claimant's statements of his symptoms are believable, or credible, the ALJ must consider certain criteria in addition to the medical evidence in the record. 20 C.F.R. § 404.1529(c). The so-called "credibility factors" include the: (1) nature of the claimant's daily activities; (2) levels of medication and their effectiveness; (3) frequency of medical contacts; (4) and consistency of non-medical testimony with objective medical evidence. *See Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004) (quotation omitted). A formal factor-by-factor review of the evidence is not required. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

### 2. The ALJ's Credibility Determination

The ALJ found that Mr. Gurule's "statements concerning the intensity, persistence and limiting effects of these [pain] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 24-25). The ALJ based this finding on Mr. Gurule's self-reported daily activities, his medical records showing that he did not comply with his doctor's recommendations, and his work activity. (AR 24-25).

Mr. Gurule continues to argue that the ALJ did not (1) make any findings regarding Mr. Gurule's ability to walk and stand; (2) link the evidence to the credibility finding; and (3) dispute Mr. Gurule's testimony that he was not able to perform the duties required when he attempted to work. (Doc. 19 at 13-14). In section A, *supra*, the Court discussed the fact that the ALJ considered Mr. Gurule's ability to walk and stand; therefore, the Court will not discuss the evidence again in this section.

As for Mr. Gurule's second argument that the ALJ did not link the evidence in the record to the credibility finding, the ALJ stated that she considered the evidence in the record. (AR 24). Unless there is some indication otherwise, the Court will take the ALJ's word when she states that she considered all of the evidence. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). Here, there is no such indication, since the ALJ's credibility determination was made alongside the RFC findings, where she thoroughly discussed the medical evidence, opinions, and testimony. (AR 23-25). As discussed in detail above, the ALJ's findings are supported by the record; therefore, the Court finds that the ALJ's credibility finding was "closely and affirmatively linked to substantial evidence" in the record. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

Finally, Mr. Gurule argues that the ALJ improperly considered work performed after his disability onset date, as he was unable to perform all of the job duties. (Doc. 19 at 14). The ALJ considered the fact that Mr. Gurule performed dry wall work during 2011 and 2012 in her credibility analysis. (AR 25). The ALJ stated that "[a]lthough [the] work activity did not rise to the level of substantial gainful activity, it does indicate that [Mr. Gurule's] daily activities have, at least at times, been somewhat greater than [he] has generally reported." (AR 25).

The Commissioner has stated that "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record . . . including . . . efforts to work." SSR 96-7p, 1996 WL 374186, at *5-6 (July 2, 1996). Further, the Tenth Circuit has previously upheld an ALJ's adverse credibility finding where the claimant had previously worked with longstanding impairments, suggesting that those conditions would not currently prevent work. *Cowan*

*v. Astrue*, 552 F.3d 1182, 1191 (10th Cir. 2008); s*ee generally Ruybal v. Astrue*, No. 2:07-cv-01060-KBM, Doc. 23, at *23-25 (discussing Tenth Circuit cases and cases from other circuits which expressly acknowledge that work efforts are a proper consideration in the credibility analysis).

In any case, the ALJ did not rely solely on Mr. Gurule's past work history to make the credibility determination. Therefore, the Court finds that the ALJ's credibility finding is otherwise supported by substantial evidence.

### C. *The ALJ's Step Two Analysis*

Mr. Gurule argues that the ALJ erred in finding that his foot condition was not severe at step two and by not discussing his obesity. (Doc. 19 at 14-17). In this case, the ALJ found that Mr. Gurule's degenerative disc and facet disease of the lumbar spine, right rotator cuff tear, anxiety, and depression were severe impairments. (AR 21). The ALJ specifically discussed that she did not find the foot condition to be severe. (AR 21). The ALJ reasoned that "the effects of this impairment have not been sustained, or consistently present to cause more than minimal functional limitations." (AR 21). Although the ALJ did not specifically discuss Mr. Gurule's obesity, she noted that she "considered the limitations imposed by all of the claimant's medically determinable impairments, in combination, as supported by the objective medical evidence of record and subjective complaints." (AR 21).

At step two, "only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process." *Langley*, 373 F.3d at 1123 (internal quotation marks omitted). This is referred to as a "de minimus" standard. *See*

*id.* The claimant need only establish—and an ALJ need only find—one severe impairment to avoid a denial of benefits at that step. *Dray v. Astrue*, No. 09-7058, 353 Fed. Appx. 147, 149 (10th Cir. Nov. 17, 2009) (unpublished). If the ALJ finds the claimant has a severe impairment, then she may not deny benefits at step two and must proceed to step three. *See id.* Therefore, "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe." *Id.*

Mr. Gurule's argument that the ALJ erred at step two fails as a matter of law. At step two, all the ALJ was required to do was determine whether Mr. Gurule suffered from at least one severe impairment, and if so, proceed to step three of the sequential analysis. The ALJ found that Mr. Gurule was severely impaired by degenerative disc and facet disease of the lumbar spine, right rotator cuff tear, anxiety and depression, and proceeded to step three; therefore, any error at step two with respect to Mr. Gurule's foot condition and obesity was harmless. *See id.* (citing *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007)). The Court cannot find that the ALJ committed reversible legal error at step two.

Mr. Gurule's argument that the ALJ did not discuss his obesity at step two also fails. Mr. Gurule did not allege disability based on obesity and although his physicians noted his BMI, they did not diagnose Mr. Gurule as obese or identify any restrictions due to obesity. (AR 369, 376, 380); see *Romero v. Astrue*, No. 06-6305, 242 Fed. Appx. 536, 542 (10th Cir. July 24, 2007) (unpublished). Mr. Gurule did not discuss his obesity or attribute any of his restrictions to obesity in his testimony at the hearing; therefore, the ALJ was not required to discuss Mr. Gurule's obesity. The Court concludes that the

ALJ did not commit reversible legal error by not finding obesity to be a severe impairment at step two or discussing it at step four.

      D. *The ALJ's Failure to Order a Consultative Examination*

Mr. Gurule argues that the ALJ erred in failing to develop the record in regard to his ability to perform the physical demands of light work or the mental demands of regular employment. (Doc. 19 at 18). Mr. Gurule contends that objective medical evidence in the record shows "more than a 'reasonable possibility'" that Mr. Gurule suffers from limitations due to obesity, foot impairments, shoulder and thumb pain, and depression and anxiety. (Doc. 19 at 19). In response, the Commissioner argues that the ALJ did not need to order a consultative examination ("CE") because she did not need to resolve any inconsistency in the evidence and there was sufficient evidence for her to make a determination regarding Mr. Gurule's disability. (Doc. 23 at 16).

In a social security disability case, the claimant bears the burden to prove his disability. *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (citing *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997)). However, since disability hearings are nonadversarial, the ALJ has a duty "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Id.* "Ordinarily, the claimant must in some fashion raise the issue sought to be developed which, on its face, must be substantial. Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Hawkins*, 113 F.3d at 1167. The ALJ then has the responsibility "'to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Id.* at 1164 (quoting *Henrie v. United States Dep't of Health &*

*Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993) (citing *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1982) (Brennan, J. concurring) (describing duty as one of inquiry, requiring the decision maker "to inform himself about facts relevant to his decision and to learn the claimant's own versions of those facts.")).

As the Tenth Circuit noted in *Hawkins*, the difficult issue is to "decide what quantum of evidence a claimant must establish of a disabling impairment or combination of impairments before the ALJ will be required to look further. [The Court] . . . acknowledge[s] that the Secretary has broad latitude in ordering consultative examinations." 113 F.3d at 1166 (citing *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)). If there is a direct conflict in the medical evidence or the medical evidence in the record is inconclusive, a CE may be required. *Hawkins*, 113 F.3d at 1166 (citing 20 C.F.R. § 404.1519(b); *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993)). Additionally, if the claimant shows that there is a "reasonable possibility" of an impairment, the ALJ has a duty to order a CE. *Id*.

However, a claimant must present "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Id*. at 1167 (citing *Diaz*, 898 F.2d at 777 (refusing to remand for CE where claimant failed to present "objective evidence supporting the conclusion that he suffers from depression.")). Medical evidence must consist of "signs, symptoms, and laboratory findings, not only [claimaint's] statement of symptoms." 20 C.F.R. § 404.1508. "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a

nonexertional impairment." *Flaherty*, 515 F.3d at 1071 (quoting *Hawkins*, 113 F.3d at 1167).

Here, Mr. Gurule argues that the ALJ needed a CE in order to determine whether Mr. Gurule was capable of working. (Doc. 19 at 8). However, this is not the purpose of a CE. "Generally, only where 'there is a direct conflict in the medical evidence requiring resolution or where the medical evidence in the record in inconclusive, is a [CE] required for proper resolution of disability claims.'" *Fagan v. Astrue*, No. 06-6261, 231 Fed. Appx. 835, 838 (10th Cir. July 3, 2007) (unpublished) (quoting *Hawkins*, 113 F.3d at 1166). Here, Mr. Gurule does not identity a conflict in the evidence and he "sheds no light on why the medical evidence was inconclusive such that the ALJ should have ordered a [CE]." *Id.* Accordingly, the Court finds that the ALJ was not required to order a CE and did not commit reversible error by not doing so.

### E. *The ALJ's Step Five Determination*

Finally, Mr. Gurule argues that the ALJ did not meet her burden to prove that there are jobs existing in "significant numbers" in the national economy that Mr. Gurule could perform based on his RFC. (Doc. 19 at 20). Mr. Gurule also states that it is not clear what methodology the VE used to determine the number of jobs available in the national economy. (Doc. 19 at 21). The Commissioner responds that the jobs listed by the VE exist in significant numbers in the national economy. (Doc. 23 at 22). Further, the Commissioner notes that the ALJ can rely on the testimony of a vocational expert. (Doc. 23 at 21).

At the hearing, the vocational expert testified that an individual with Mr. Gurule's age, education, work experience, and RFC would be able to perform the requirements

of an assembler/small product with 25,000 jobs available nationally, an inspector/hand packager with 23,000 jobs available nationally, and an electronics worker with 17,000 jobs available nationally. (AR 26-27). The ALJ found that the VE's testimony was consistent with the Dictionary of Occupational Titles and accepted it. (AR 27).

Mr. Gurule argues that adding up the total number of jobs available in these career fields nationally, there is not a significant number as required by 42 U.S.C. § 423(d)(2)(A). (Doc. 19 at 21). Mr. Gurule contends that the ALJ should have used the *Trimiar* factors to determine whether the number of jobs nationally rises to the significant level. (Doc. 19 at 21), citing *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992).

The *Trimiar* Court addressed the question of what constitutes a significant number of jobs under the statute. *Trimiar*, 966 F.2d at 1330. The *Trimiar* Court stated that "[t]his Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number' and rejects the opportunity to do so here," finding instead that each case should be evaluated individually. *Id*. However, the *Trimiar* Court did note several factors that should go into the evaluation of significant numbers: "the level of claimant's disability; the reliability of the vocational expert's testimony, the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of work." *Id*. (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)). "[T]he issue of numerical significance entails many fact-specific considerations requiring individualized evaluation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004). Therefore, "[t]he decision should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular

20

claimant's factual situation." *Trimiar*, 966 F.3d at 1330 (quoting *Jenkins*, 861 F.3d at 1087) (internal quotation marks removed)).

Analyzing the *Trimiar* factors here, the ALJ determined Mr. Gurule's level of disability by formulating an RFC based on the evidence in the medical record and included Mr. Gurule's physical limitations as appropriate in the RFC. The ALJ considered Mr. Gurule's ability to get to work, Mr. Gurule testified that he is able to take the bus or use his bike to travel, although it has been harder for him to ride his bike recently. (AR 42-43). In her opinion, the ALJ noted that Mr. Gurule is able to use public transportation. (AR 24). The ALJ does not appear to have heard testimony regarding the "isolated nature of work," but did elicit the number of jobs available nationally. (AR 66). Mr. Gurule disputes the number of inspector/hand packager jobs, arguing that there are 20,400 nationally instead of 23,000, but agrees to a total number of 65,000 jobs nationally for the careers described by the VE. The ALJ asked the VE about what jobs Mr. Gurule could perform, whether his skills would transferable to these jobs, and whether someone with his same RFC could perform these jobs. (AR 64-69).

Mr. Gurule questions the reliability of the VE's testimony. (Doc. 19 at 21). Mr. Gurule states that the VE's methodology is unclear because she stated that there were 23,000 inspector/hand packager jobs; whereas, the Bureau of Labor Statistics indicates 20,400 jobs for inspectors and hand packagers in the plastics industry. (Doc. 19 at 21). Vocational experts may rely on different sources of material, including, but not limited to, publications by the Bureau of Labor Statistics. 20 C.F.R. § 404.1566(d). Therefore, the discrepancy in the job numbers does not undercut the VE's testimony. Further, Mr. Gurule's counsel questioned whether the VE was an expert at the hearing, and the ALJ

determined that the VE was "qualified to render an expert opinion." (AR 39). The VE
testified that her opinion was consistent with the Dictionary of Occupational Titles,
except for her opinion regarding the amount of time an individual is off task and
attendance, which was based on her experience. (AR 70).

Mr. Gurule asks the Court to remand the case for the ALJ to consider the *Trimiar*
factors; however, it is clear from the hearing and the opinion that the ALJ already
considered these factors in determining that work exists in significant numbers in the
national economy for Mr. Gurule. Because the record indicates that the ALJ weighed
the appropriate factors, the Court will not remand the case.

## V.    Conclusion

For all of the foregoing reasons, the Court concludes that the ALJ did not commit
the errors alleged by Mr. Gurule. In addition, the Court finds that substantial evidence
supports the ALJ's determinations challenged by Mr. Gurule.

**IT IS THEREFORE ORDERED** that Mr. Gurule's *Motion to Reverse and Remand
for Rehearing, with Supporting Memorandum*, (Doc. 19), be **DENIED** and that this
cause of action is **DISMISSED WITH PREJUDICE**.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE

22